IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | Civil No. 1:22-CV-01210 |
| MANN REALTY ASSOCIATES, INC. : | |
| Debtor, : | |
| ROBERT M. MUMMA, II, : | |
| Appellant, : | |
| v. : | |
| MARKIAN R. SLOBODIAN, : TRUSTEE FOR MANN REALTY : ASSOCIATES, INC. and : U.S. TRUSTEE, : | |
| Appellees. : | Judge Jennifer P. Wilson |

# ORDER

This case is before the court on appeal from an order entered by the United States Bankruptcy Court for the Middle District of Pennsylvania that approved the sale of two parcels of real property owned by the Debtor, Mann Realty Associates, Inc.[1]  Presently before the court is an emergency motion to stay the order approving sale pending appeal by Appellant Robert M. Mumma, II ("Mumma"). (Doc. 2.)  For the reasons that follow, the court will deny the motion to stay.

---

[1] The underlying bankruptcy case is at docket number 1:17-bk-01334.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On March 31, 2017, the underlying bankruptcy case commenced by Mann Realty Associates, Inc. ("the Debtor") filing a voluntary Chapter 11 petition. (Doc. 2-18, p. 3.)[3] The action was converted to Chapter 7 on January 25, 2018, with Markian Slobodian appointed as Trustee ("the Trustee"). (*Id.*)

Double M Development ("Double M") filed Proof of Claim No. 21-1 on February 23, 2018, asserting an unsecured claim in the amount of $3,920,000.00. (Doc. 2-5.) Mumma, the Trustee (joined by creditor, S&T Bank), and another creditor objected to the Double M Claim. (*See* Doc. 2-3, p. 8.) Following a mediation convened with all objectors, the Trustee filed a motion to approve a settlement agreement regarding the Trustee's objection to Claim No. 21-1 of Double M on February 4, 2022. (Doc. 2-6.) The settlement agreement, if approved, provides a reduction of Double M's claim to $3,900,000.00, along with other terms. (*Id.*) The motion to approve the settlement agreement is still pending before the bankruptcy court. (Doc. 2-18, p. 4.)

---

[2] The factual and procedural background of the underlying bankruptcy action is extensive. *See In Re: Mann Realty Associates, Inc.*, No. 1:17-bk-01334 (Bankr. M.D. Pa.) However, it is not necessary to recite the lengthy history of the bankruptcy case for purposes of resolving the pending motion before the court. Thus, the court cites only the information relevant to resolution of the pending motion in this order.

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

On April 29, 2022, the Trustee filed a motion for sale of the Debtor's unimproved real estate and a motion to approve bidding procedures for public sale of the Debtor's unimproved real estate. (Docs. 2-7, 2-8.) The motion for sale named two parcels of real estate to sell in Susquehanna Township, Dauphin County, Pennsylvania, identified as Tax Parcel Nos. 62-009-001 ("Parcel 001") and 62-009-081 ("Parcel 081").[4] (Doc. 2-7, p. 2.) When the motion for sale was filed, it was believed that both parcels were encumbered by a lien from S&T Bank, a creditor in the bankruptcy case. (*Id.* at 3.) Mumma, a majority shareholder of the Debtor, objected to both motions. (Doc. 2-9.) On June 10, 2022, the bankruptcy court overruled Mumma's objection, and granted the motion to approve bidding procedures. (Doc. 2-10.) A public auction was held on July 12, 2022, where the highest bidder of four potential buyers for Parcels 001 and 081 offered $1,015,000.00. (Doc. 12-1, pp. 8, 49.)

During hearings on the motion for sale on July 12, 2022, and July 19, 2022, it was determined that S&T Bank's lien was only on Parcel 001, not Parcel 081. The Trustee explained that he did not go through the metes and bounds of the properties in question to determine if S&T Bank's lien was on both properties. (Doc. 12-2, p. 56.) Rather, he relied on the mortgagee to provide accurate

---

[4] Parcel 001 is approximately 132 acres, while Parcel 081 is approximately 2.7 acres. (Doc. 9, pp. 2–3; *see* Doc. 12-2.)

3

information, and he stated that, in his experience as a Trustee, he generally has no reason to review the mortgage description in the level of detail required to catch the kind of issue before the court. (*Id.*) A review of the transcript on this issue indicates that all parties were unaware that S&T Bank's lien did not apply to Parcel 081 until Mumma's counsel identified this fact in July 2022. (*See* Docs. 12-1, 12-2.)

The bankruptcy court ruled on the motion for sale on July 19, 2022 orally on the record, and by written order entered on July 21, 2022. (Doc. 12-2, pp. 84–102; Doc. 1-1.) During the on-the-record ruling, the bankruptcy court reviewed the legal standard to approve a sale, considered the Trustee's exercise of business judgment, and found that the sale met all required factors. (Doc. 12-2, pp. 84–102.) In doing so, the bankruptcy court found that the Trustee's business judgment was sound particularly because notwithstanding the unresolved Double M Claim (as well as another smaller unresolved claim by GSPC), the allowed claims "exceed the funds that are available for distribution." (*Id.* at 89–90.) As summarized by Mumma, the bankruptcy court reasoned:

> (1) the Trustee had the authority to sell the Property under the Federal Bankruptcy Rules; (2) a valid business purpose exists for selling the Property; (3) the sale price is fair; (4) the Debtor was provided adequate and reasonable notice; (5) the purchaser was a good faith purchaser for value pursuant to 11 U.S.C. § 363(m) under the framework provided by *In re: Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); (6) while "due care was a concern," the misrepresentation as to S&T's purported lien on both parcels was "an honest error;" and (7) the

> Trustee met his burden for showing that his business judgment should be respected.

(Doc. 2-3, pp. 11–12.)

On August 4, 2022, Mumma filed a notice of appeal. (Doc. 1.) The same day, Mumma asked the bankruptcy court to stay the July 21, 2022 sale order during the pendency of the appeal. (Doc. 2-17.) Following a hearing on the motion for stay pending appeal, the bankruptcy court denied the stay. (Doc. 2-3, p. 12; Doc. 2-18.) Mumma then filed an emergency motion for stay pending appeal with this court, along with a brief in support and exhibits, on August 23, 2022. (Doc. 2.) The court subsequently scheduled oral argument for August 31, 2022, and, based on an agreement of the parties, issued an interim stay of the sale order pending the court's disposition of the motion to stay. (Docs. 3, 6, 11.) The Trustee filed a brief in opposition to the motion to stay on August 29, 2022. (Doc. 9.) Following the oral argument, the court invited Mumma to file a letter brief with supplemental authority on one issue. (Doc. 13.) Thus, the motion to stay is ripe for disposition.

## JURISDICTION

The court has jurisdiction under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts.

5

## DISCUSSION

Courts must consider four factors when determining whether to grant a motion to stay pending appeal:

> (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The court must balance these factors, but "the most critical" are the first two factors. If the chance of success on the merits and the possibility of irreparable injury elements are not satisfied, then a movant's request for stay fails. *Id.* at 570 (*Nken v. Holder*, 556 U.S. 418, 434 (2009)) (internal quotations omitted).

### A. Likelihood of success on the merits of the appeal

Mumma sets forth four arguments to support his assertion that he is likely to succeed on the merits of his appeal. First, relying on the Handbook for Chapter 7 Trustees published by the United States Department of Justice ("the Handbook"), Mumma argues that the bankruptcy court erred by approving the sale because the Trustee's actions were inconsistent with the purposes reflected in the policies and procedures of the Handbook. (Doc. 2-3, pp. 13–14.) Specifically, Mumma asserts that the settlement agreement (which has not yet been approved by the bankruptcy

court) and the terms of the sale of Parcels 001 and 081 do not provide for any payment to creditors or purported creditors other than S&T Bank and Double M. (*Id.* at 14.) Although there is a $10,000.00 carve-out from the proceeds of the sale to benefit unsecured creditors, Mumma opines that this negligible amount provides no actual benefit. (*Id.*) For these reasons, the sale is not appropriate and reflects the Trustee's failure to exercise sound business judgment. (*Id.*)

Second, Mumma argues that the bankruptcy court erred by relying on the Trustee's business judgment in approving the sale. (*Id.* at 14–16.) According to Mumma, the Trustee lacked due care in failing to closely review the S&T Bank mortgages and instead relying on S&T Bank's assertion that both Parcel 001 and Parcel 081 were encumbered. (*Id.* at 15.) The Trustee also allegedly lacked due care in not providing any evidence to support the conclusion that the bankruptcy estate has insufficient funds to pay all currently allowed unsecured claims in the absence of the sale. (*Id.*) Rather, if the Trustee had exercised due care, Mumma opines that he would have provided the parties with complete information regarding the universe of claims, the amount payable for each claim, and the current cash on hand in the estate. (*Id.* at 16.)

Third, Mumma asserts that the sale of the property is improper because Parcel 081 is, in fact, not encumbered by a S&T Bank lien. (*Id.* at 16–17.) He argues that Parcel 081 should not be sold, and the size of the parcel in comparison

to the total acreage of both parcels is immaterial to the propriety of the sale. (*Id.* at 16.) The terms of the sale remain unchanged even though all parties agree that Parcel 081 is unencumbered. (*Id.* at 16–17.) Further, the sale fails its purpose of determining S&T Bank's deficiency because it cannot be determined how much of the sale price may be allocated to Parcel 001 versus Parcel 081. (*Id.* at 17.) Ultimately, Mumma argues that the creditors and parties are improperly deprived of the proceeds of the sale of Parcel 081. (*Id.*)

Lastly, Mumma argues that the sale is premature as the bankruptcy court has not yet ruled on the objections to the Double M Claim and proposed settlement agreement. (*Id.* at 18.) Mumma opines that the sale's true purpose is to fund the settlement agreement, which has not yet been approved by the bankruptcy court. (*Id.*)

In opposition, the Trustee asserts that Mumma's opposition to the sale boils down to a restatement of his objection to the Double M Claim. (Doc. 9, p. 5.) Mumma mistakenly believes that if his objection to the Double M Claim is successful, the bankruptcy estate will be able to pay all creditors with the funds already available without the funds from the sale of Parcels 001 and 081. (*Id.*) Then, Mumma believes he could obtain control of Parcels 001 and 081 to continue his business. (*Id.*) However, the bankruptcy court agreed with the Trustee that additional funds are needed to pay all current creditors, regardless of the outcome

of the Double M Claim, in an amount that exceeds the funds currently in the estate. (*Id.* at 5, 7–8.)

Regarding Mumma's contention that the Trustee's business judgment was flawed and that the Trustee lacked due care in failing to independently discover that Parcel 081 was unencumbered, the bankruptcy court considered the error troubling at first, but ultimately concluded that the Trustee exercised due care. (*Id.* at 6.) Further, the Trustee asserts that all sale proceeds will be escrowed until the Double M Claim is resolved; thus, the value of Parcel 081 can be determined prior to filing a motion to make any distribution of funds. (*Id.* at 7.)

Likelihood of success is "arguably the more important piece of the stay analysis." *In re Revel*, 802 F.3d at 568. The Third Circuit requires that the movant prove that there is "a reasonable chance, or probability, of winning" the appeal.[5] *Id.* at 568–69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). While Mumma presents a variety of arguments regarding his likelihood of success on appeal, the court finds that the crux of these contentions is whether the Trustee exercised sound business judgment in selling Parcels 001 and 081.

---

[5] In reviewing the merits of an appeal, the district court reviews bankruptcy court decisions de novo. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

After notice and a hearing, a trustee may sell property of the bankruptcy estate outside the ordinary course of business under 11 U.S. Code § 363(b) if four conditions are satisfied: "(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Antunes*, No. BR 15-16553-MDC, 2019 WL 9137004, at *8 (Bankr. E.D. Pa. Feb. 19, 2019) (citing *In re Elpida Memory, Inc.*, No. 12-10947, 2012 WL 6090194 (Bankr. D. Del. Nov. 16, 2012); *Sheehan v. Dobin*, No. 10-5054, 2011 WL 1627051 (D.N.J. Apr. 28, 2011)). The only condition that Mumma challenges is whether a sound business purpose exists for the sale. In evaluating this factor, the court "should accept the Chapter 7 Trustee's business judgment, unless there is evidence of bad faith." *Id.* (citing *In re Shubh Hotels Pittsburgh, LLC*, 439 B.R. 637, 639 (Bankr. W.D. Pa. 2010)). Reviewing the Trustee's business judgment, the court examines "whether the proposed transaction (1) represents a business decision, (2) is made with disinterestedness, (3) is made with due care, (4) is made in good faith, and (5) does not constitute an abuse of discretion or waste of assets." *Id.* (citing *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2004 WL 1634538 (Bank. S.D.N.Y. June 22, 2004)).

Again, Mumma does not challenge every aspect of the business judgment test. He submits only that the Trustee did not act with due care. The parties do not

dispute the standard for due care, that is how "an ordinarily prudent [person] in the conduct of his private affairs under similar circumstances and with a similar object in view" would act.  *See* Hon. Steven Rhodes, *The Fiduciary and Institutional Obligations of A Chapter 7 Bankruptcy Trustee*, 80 AM. BANKR. L.J. 147, 172 (2006) (citing *In re NWFX, Inc.*, 267 B.R. 118, 159 (Bankr. W.D. Ark. 2001) (quoting *In re Haugen Const. Service, Inc.*, 104 B.R. 233, 240 (Bankr. D.N.D. 1989)).  The court notes that "great judicial deference is given to the Trustee's exercise of business judgment."  *Sheehan*, 2011 WL 1627051 at *3 (citations omitted).

Applying these legal standards to the arguments raised here, the court concludes that Mumma has not established a likelihood of success on the merits of his appeal.

### 1. Handbook for Chapter 7 Trustees

Addressing Mumma's first argument, the court perceives that Mumma is actually attacking the business judgment of the Trustee, although he does not frame the argument in those terms.  Mumma has not explained or supported how the Trustee's alleged divergence from the Chapter 7 Trustee's Handbook equates to a lack of business judgment.  There is no evidence of bad faith on behalf of the Trustee, nor is there any evidence that an ordinarily prudent person would have acted differently.  Accordingly, the court finds this argument unpersuasive.

### 2. Deference to Trustee's Business Judgment

Turning to Mumma's assertion that the Trustee lacked due care in failing to note that Parcel 081 is unencumbered and that the sale was improper due to the lack of encumbrance, the court is not persuaded. An ordinarily prudent person would, as all parties to this action did for many years, rely on the S&T Bank mortgage description. Further, the Debtor and S&T Bank were the entities in the best position to know whether Parcel 081 was encumbered by the S&T Bank mortgage. Although the oversight was understandable, it remains true that there was an oversight about the lack of encumbrance on Parcel 081. While Mumma makes much of this error, he has not demonstrated that this error undermines the sale of the real estate in any concrete way. Stated plainly, Mumma has not established that a different business judgment would have been made regarding the sale of Parcel 081 if the lack of encumbrance had been caught before the Trustee filed the motion to sell the real property. Thus, finding no material lack of due care, the court declines to find that the Trustee failed to exercise sound business judgment.

### 3. The Motion to Sell the Real Property Was Premature

Finally, addressing Mumma's argument that the sale of the real property was premature, the court notes that both the bankruptcy court and this court were presented with information from the Trustee establishing that the bankruptcy estate

does not have sufficient funds to pay all claims and fees even without considering the Double M Claim. During oral argument, the Trustee provided the court with figures illuminating the need for additional funds to pay the current claims, fees, and expenses of the bankruptcy estate. As of August 31, 2022, the bankruptcy estate had approximately $4,020,000.00 (which is subject to reduction due to costs and fees). As the claims currently stand in addition to fees and expenses typical of a bankruptcy estate, $4,094,000.00 is needed to pay all claims and fees. Thus, for this basic reason, the court is satisfied that the Trustee exercised sound business judgment in selling Parcels 001 and 081 in July 2022, regardless of how the bankruptcy court rules on the Double M Claim.

Accordingly, the court holds that Mumma does not have "a reasonable chance, or probability, of winning" his appeal, and fails to establish the likelihood of success on the merit element. *See In re Revel*, 802 F.3d at 568.

**B. Irreparable harm absent a stay**

Mumma argues that he will be irreparably harmed absent a stay because his appeal will be deemed statutorily moot upon the sale of Parcels 001 and 081. (Doc. 2-3, p. 19.) Upon request of the court, Mumma filed a supplemental letter brief to advise whether there is any case law in support of the proposition that an appeal being moot equates to irreparable harm. (Doc. 13.) Mumma could not identify any binding authority on this point, but requests that the court infer that

statutory mootness can qualify as irreparable harm. (*Id.* at 2.) In addition to this argument, Mumma asserts that if Parcels 001 and 081 are sold, there is no more real estate left in Debtor's business, which is a real estate development business. (Doc. 2-3, pp. 19–20.) Thus, the sale of the parcels essentially ends the business because cash, rather than real property, cannot make Mumma or the Debtor whole. (*Id.*) At oral argument, Mumma asserted that the irreparable harm is the "opportunity" the property presents for Mumma and the Debtor's business.

The Trustee argues that the simple fact that the property being sold is real estate does not equate to irreparable harm particularly when the property is not Mumma's residence, but mostly undeveloped land. (Doc. 9, p. 11.) To the extent Mumma must be made whole from the sale of the parcels, the value of the property could be quantified at a later hearing. (*Id.* at 11–12.)

For irreparable harm to be established, an applicant must "demonstrate that irreparable injury is *likely* not merely possible in the absence of a stay." *In re Revel*, 802 F.3d at 569 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The Third Circuit interprets "likely" as "more apt to occur than not." *Id.* The court finds that Mumma will not suffer an irreparable harm absent a stay of the order approving sale. First, there is no authority for the proposition that the statutory mootness of an appeal alone equates to irreparable harm. Further, although real property in certain circumstances is deemed unique under the law so

that compensation is not an appropriate remedy, that is not the case here.  The parcels at issue are not Mumma's residence and are largely undeveloped land.  Thus, the court will not view the loss of these parcels as an irreparable harm.  *But see Harmon v. Sussex Cty.*, No. 17-1817, 2018 WL 2999910 (D. Del. June 14, 2019) (finding irreparable harm where the property at issue was the movant's residence); *Clark v. U.S. Bank Nat'l Ass'n*, No. 03-5452, 2004 WL 1380166 (E.D. Pa. June 18, 2004) (same).  Lastly, the fact that the property may present an "opportunity" for Mumma to keep the Debtor's business alive, is far too speculative to overcome the "more apt to occur than not" standard.

Because the court finds that Mumma cannot meet the first two factors for the motion to stay, the court need not balance the private and public harms.  *See In re Revel*, 802 F.3d at 569–70.

## Conclusion

Accordingly, for the reasons stated herein, **IT IS ORDERED THAT** Mumma's emergency motion to stay, Doc. 2, is **DENIED**.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Court Judge
> Middle District of Pennsylvania

Dated: September 2, 2022